Good morning. May it please the Court. Benjamin Brooks on behalf of Ever Rivera. Chief Judge Howard, could I reserve one minute for rebuttal? Yes. So this is an appeal of the denial of a habeas petition involving a state court case and alleging two claims of ineffective assistance to counsel. One that involves a broken promise by the trial counsel during her opening statement to the jury, and the second which involves failure of trial counsel to move to suppress an incriminating statement given by the defendant. I wanted to start talking about the broken promise and begin on the prejudice prong of the Strickland standard because I think that's where the real meat of this appeal is and to explain why, in my view, counsel's failure to follow through on her promise and the act of making the promise and then failing to deliver any evidence of it really mattered in this case and why it affected it. And the first reason is that this was a case where, on the facts, my client Ever Rivera got into an argument with the victim who ended up being stabbed, Mr. Williams. There was no question that they had an argument. There was no question that some altercation ensued after that argument. And there was no question that Williams eventually ended up with three various serious stab wounds. And in this context, during her opening statement to the jury, Mr. Rivera's trial counsel tells the jury about how they will hear that Mr. Rivera and argued. And then she says, listen, you'll hear that there were two other people involved in this argument, one who was unknown to any of the witnesses and another one whose name is Luis Ruiz. And I think the factual record shows that actually what she meant to say was Luis Diaz, not Ruiz. And I think that's just kind of another example of how she hadn't really adequately prepared for this trial. But even setting that aside, what she says is there are these two other people involved. She names one. She names Ruiz. And then she says, nobody is going to tell you that Mr. Rivera had a knife, but you will hear that Mr. Ruiz had a baseball bat and you will hear that Mr. Ruiz was wielding a knife. And you say that she returned to that argument in her closing argument. I had trouble finding that, frankly. That's important on the issue of prejudice. What did she actually say in closing? In closing, she doesn't say Mr. Ruiz or Mr. Diaz was there with a baseball bat and a knife. She says he was present, even though she never actually elicited any evidence of his presence throughout the course of the trial. And there are two places in her closing statement where she's going through the argument saying the Commonwealth hasn't shown anything other than Mr. Rivera's presence, just as Mr. Gonzalez was present, just as Mr. Ruiz was present, just as Mr. Well, she made some general reference to there are other people in the area. Does she say anything more than that? Well, she specifically says that in the context of arguing that all the Commonwealth has done is shown mere presence, she says just, and the Commonwealth has shown nothing more than Mr. Rivera was present at this altercation, just like Gonzalez was present, just like Reyes, the other two witnesses, and just like Diaz, right? Or Ruiz is the word she uses. It's twice in the transcripts. One time, I think actually the transcripts say they can't understand what the word that's used is, so the spelling's a little different. But I can point that out to you. But my point here is that this was a prominent, this was the most dramatic moment in that opening statement. And I think the Commonwealth wants to say, well, maybe this isn't on par with the opening statements in Anderson and Uber, because it only took up three lines of the opening. But the opening itself here was only a few pages long, and this was the centerpiece of the stated defense that she was going to pursue. But the thing that seems to differentiate this from the other two cases, both of which I participated in, is that here there is a tactical reason that's very easily inferrable for not presenting the evidence. The Commonwealth's case was about as thin as it could be in the case, but still get to the jury. Counsel's argument was insufficiency of the evidence. She risked beating up the Commonwealth's case by presenting any other witnesses. So in that type of circumstance, I'm finding this aspect of your argument somewhat difficult to accept, because I can envision, given the way the Commonwealth's case went in, a reasonably competent attorney not doing that, not putting anyone on the stand because any evidence risks filling in the holes that the Commonwealth had left. Right. Well, there are two points to that. One is that the analysis isn't whether or not she should have introduced this evidence or not. The analysis is, should she have promised it? No, no, I understand that, but going to prejudice, the fact that she did that by carrying through on what you characterize as a promise, and I think that itself is arguable, but let's not get hung up on that, that she risked doing more harm than good, and I think that goes to the question of whether you can say that this error was prejudicial. Okay, so I think on that point, what counsel actually ends up, and this is why I think this case is like Anderson, because what happens is, counsel makes this promise of kind of a robust defense, and then doesn't introduce the facts that she could have to argue that defense and offers a kind of more watered down version of it, because what counsel ended up arguing here was this sort of lack of sufficient evidence, right? But on the facts of this case, counsel was still never seriously disputing the fact that Eber Rivera had an altercation with Williams. She was never disputing the fact that Williams left that altercation with three stab wounds. She never seriously suggested that some other person who testified could have been responsible for those wounds, right? She never suggested that Gonzalez might have done it. So that defense required some third party cooperation. Well, if that's a correct summary of trial counsel's closing argument, what you've just stated, doesn't that undermine your claim of prejudice on your other claim of ineffectiveness? On the statement? Yeah. I mean, if everyone knew that Rivera had an altercation with the victim, and that it was Rivera who got in a fight with him, etc., etc., then aren't these pre-Miranda statements, that you say with some force, were improperly admitted? Weren't they clearly non-prejudicial? Well, I think that the main argument on the statements is that the prejudice to Mr. Rivera was on the conviction for assault with intent to murder, which required the jury to find not only that he intended to kill Mr. Williams, but that there was a lack of any mitigation, that there was no excessive force in self-defense, that it was not a result of a response to sudden combat, and or sudden provocation. And in this case, the only direct evidence of what Mr. Rivera's motivation was for fighting with Mr. Williams in the first place was this story of Officer Sistran. And when the evidence comes in that Officer Sistran says, what are you doing? And he said, I had a beef with a nigger. And then he says, because he disrespected me, that was very powerful evidence that he intended to go into that fight with some nefarious intention. Whereas if that had not been in there, then counsel could effectively have said, there is no way that the Commonwealth can get over the hump of proving an absence of mitigation. I think this is the point that John Sully was making. I mean, there is testimony, I think from Mr. Gonzalez in particular, that there was an altercation between your client and Mr. Williams, right? I mean, there are descriptions of having to pull Mr. Williams, I mean, he's been stabbed, but he's on top of Mr. Rivera. And isn't the testimony he has seen punching Mr. Rivera in the face? Right. The testimony was basically, you know, which was different than what the statements in the police report were as well. But Gonzalez's testimony at trial was essentially, there was some tension in the room, they went outside, he looked out, there was no... So there's clearly evidence that there was a fight going on between Mr. Rivera and Mr. Williams, and Mr. Williams emerges from that fight with three very serious stab wounds, correct? Correct. So absent an ability to suggest that somebody else stabbed Mr. Williams, it becomes a pretty powerful inference that Mr. Rivera, who's being pwned, perhaps as a way of defending himself, stabbed Mr. Williams. So I would think that from the perspective of the appellant's case, being able to suggest that somebody else stabbed him becomes pretty important, does it not? Yes, that's my position. So you can't argue lack of evidence without some potential third party culprit on the fact of this case. And she had that in Mr. Diaz. She had two live witnesses. And just to get back to Judge Selya's point, this isn't a question of actually calling a witness, right? This is just a question of eliciting a critical fact. And I think that in some ways, that's the only thing that really distinguishes this case from, say, Anderson and Uber, where you have a promise to produce a particular witness. Here it was a promise to produce a fact that she exaggerated, but she could have elicited the portion of it that was Mr. Ruiz was there and participated, and then she doesn't do it, and then she has nothing to argue. But Judge Selya's point, which I think is very interesting, I hadn't thought of it. I mean, in terms of, I mean, I frankly, I find myself asking, why would defense counsel not seek suppression of the statements? I can't imagine why you wouldn't. I mean, that's not trial strategy. There's just no reason not to do that. But on the prejudice point, those statements seem to go to the issue of the defendant admitting that there was, that he had a confrontation with Mr. Williams. But if that's the only significance of those statements, there's not a dispute that he had a confrontation with Mr. Williams. I mean, there is eyewitness testimony that they were involved in a fight. Doesn't that, given all that other evidence, doesn't that significantly reduce the prejudicial effect of not achieving suppression of those statements? Well, I mean, I think that my answer is going to seem repetitive. But the answer is, I think that because it goes, saying, I had a beef with a nigger because he disrespected me, I think is very powerful evidence of an intent to murder, right? And that gave the jury something that they could latch onto that said, when he went into a fistfight with a knife and he wanted to kill this guy because he felt disrespected. And I think that the prosecutor even made that specific argument to the jury. But if it had just been, they went outside, they had an argument, and the evidence showed that Williams was winning, and then he ended up with a stab wound, the jury might not have decided that Mr. Rivera had an intent to kill. He might have been convicted of one of the lower counts, but not the top count, that's what you're saying? Right. And, but with those statements, that was really the only evidence, I suggest, that could get the commonwealth over the hump of proving that there was an absence of mitigation on the charge of assault with intent of murder. Okay. Thank you. May it please the court. Assistant Attorney General Todd Bloom for the respondent, Michael Thompson. Counsel, I'm going to ask you to start where we left off, to start with the non-Mirandized statements. Yes, sir. All right? It seems to me there are two aspects to this claim. The first aspect is whether it was constitutionally deficient performance not to move to suppress. Isn't this pretty clearly the type of questioning that was barred by Rhode Island against Dennis? Your Honor, I would suggest that the record here shows that Sister Ann's questions did not amount to interrogation. If you look at the statement, they did not, Your Honor. They went right to the heart of the matter. Well, Your Honor, first... What were you doing? How did you get the board on your hands? Yes, Your Honor. Those aren't the procedural type of booking questions that the Supreme Court has approved in Pennsylvania against Muniz and the other cases. That's true. They're not, Your Honor. But Officer Sister Ann was not provided with any descriptions of anybody involved. He just asked the petitioner to stop. And the petitioner asked why. And he again asked him to stop, and the petitioner kept running up the sidewalk. And if you look at the sequence of what happened, he ordered the petitioner to the ground with a service weapon at his side, and it was pointed at the ground. So arguably, he was in custody at that time. It's not arguable. He was in custody. Yes, Your Honor. Okay. Can't be much more in custody than to be on the ground with an officer over you pointing a gun at you. And so Officer Sister Ann asked the petitioner his name and what he was doing. And then all of a sudden, these statements came out. Now, these statements... No, that's not quite so. The statement about the blood on his hands, it was in response to a direct question. It was in response to another question, yes, Your Honor. Yeah. And, you know, there was nothing going on at the time that prevented or inhibited even Sister Ann from taking an extra 30 seconds and getting this fellow on the ground with a gun pointed at him and disabled in that sense, giving him his Miranda warnings. That's what Miranda warnings are for, before police elicit potentially incriminating information from a suspect. Your Honor, I would submit that these questions were not worded in a confrontational manner. They did not accuse the petitioner of anything. And so what's the rule? Any custodial interrogation, as long as it is not delivered in a confrontational manner, avoids the necessity of Miranda? Well, Your Honor, the words, attending to arrest and custody, are not confrontational. And anything reasonably likely to elicit an incriminating response would constitute interrogation. And I would submit again that these questions were not worded in a confrontational manner. When viewed independently, they did not accuse the petitioner of any crime, and they couldn't have because, again, Sister Ann was not provided with any descriptions of any suspects in the stabbing. He saw a man running in the middle of the night, crossing the street, and did not stop when he was asked to. What's the best case you have for saying that no Miranda warnings are necessary for these questions? Your Honor, that the Rhode Island versus Dennis case itself found that the record didn't indicate that, in a context of the brief conversation, that the officers should have known that the respondent would be suddenly moved to make these statements. And I would submit that that's happened here on this factual record as well. Well, humanly, and assume for the sake of argument that the panel finds the other way on this issue, let's talk about the issue of prejudice. Yes, Your Honor. What's our standard of review? Your Honor, it's our position that both claims, we have a doubly deferential standard of review and can be decided on the prejudice prong of both claims. Okay. Now, you say doubly deferential. I take it you mean that you argue that the Edpa standard applies to the prejudice prong. Yes, Your Honor. But the Massachusetts Appeals Court explicitly determined that it would not consider the prejudice prong because it considered it unnecessary to do so. Well, Your Honor, I believe the Massachusetts... Isn't that correct? The Massachusetts Appeals Court, Your Honor, did not explicitly discuss prejudice, but... Because it decided the case on a custodial interrogation holding. But, Your Honor, I think the Appeals Court also said that for the reasons in the Commonwealth's brief, and cited to 30 pages of the brief, and I believe this Court's decision in McGraw said that when the State Court cites in that manner to a brief, where here we have a Commonwealth's brief that went through an entire Strickland analysis, that that is sufficient for adjudication on the merits. So, you think the statement in the Commonwealth's brief went specifically to the prejudice prong on the custodial interrogation point? This statement in the Appeals Court's decision? No, Your Honor, I'm saying that the Appeals... I mean, that statement, as I recall it, in the Appeals Court decision, as you know, was skeletal. Yes, Your Honor. I recall that as being a throwaway sentence at the bottom, which said something like, for these reasons and for the reasons set forth in the Commonwealth's brief, the appeal is denied. Something like that. Is my recollection wrong? Yes, Your Honor, it said, for these reasons and for the reasons... Yeah, but in other words, it wasn't specifically related to the prejudice prong. Counsel, isn't the logic of the... So, the logic here is, of the Mass Appeals Court decision, is that on both the issues we're talking about, they found that there was no fear to perform as Strickland required. They didn't have to reach the prejudice inquiry. It seems to me that on both those issues, our standard of review is de novo. Is that correct? Well, Your Honor, even if the standard of review is de novo, which we're not saying that it is, it's our position that the petitioner has not met prejudice and that the case can be decided on Strickland's prejudice prong. So, there's not a double deference in that situation, right? In that particular situation, but we're arguing that there is a double deferential standard of review here, Your Honor. On the performance issue? Well, we're arguing that it's on both prongs, Your Honor. In other words, you're not accepting the assumption we asked you to accept, that you assume that it's de novo on prejudice in the custodial interrogation. If you make that assumption, there's no double deference. If you do make that assumption, then there is no double deference. That is correct. Briefly, just on the prejudice prong of the second claim, these statements did not refer to the stabbing or even suggest that Mr. Rivera had possession. No, but they did refer, they did two things. First, they referred to motive, right? They gave a motive, which as your brother counsel has pointed out, really constitutes the only evidence that a jury could ground the finding of intent to murder for the top count of the indictment on. Your Honor, I would submit that that is not the only evidence. What other evidence do they have? We have other evidence that the petitioner was engaged in a fight with Mr. Williams. We have Gonzales' eyewitness testimony. We also have Zonghi identifying the petitioner as being present at the residence, going outside with Williams and being... Nobody saw him wielding a knife, isn't that correct? That is correct. So with respect to the use of the deadly weapon, the case is circumstantial, is it not? Yes, Your Honor, and here I would submit, briefly going to the first claim, that counsel did the best she could given what happened at the trial. This is a case where counsel made a general statement in her opening that the jurors would, quote, hear testimony that the police had a bat and was also wielding a knife. We have a record here that suggests that counsel's comment about the knife was premised on the petitioner's direct representations to her. Page 201 of Mr. Brooks' affidavit says, quote, trial counsel stated the information about wielding a knife came from the petitioner. We told her that the witnesses would be able to confirm this information. So we have counsel, given this other evidence, doing the best she could, and I would submit again that if you look at how all of the evidence unfolded at the trial, it is reasonable that counsel made a strategic decision to refine the evidence that was ultimately presented to the jury because the additional evidence mentioned in opening was no longer necessary to sustain the defense that was ultimately presented, which again was the circumstantial evidence. But you still have this, it seems to me, powerful fact that there is testimony about the fight between Mr. Rivera and Mr. Williams, and Mr. Williams emerges from that with three very serious stab wounds. In the absence of a suggestion that some third party administered those stab wounds, it's a very powerful inference that it was Mr. Rivera who stabbed him. So that third party theory seems to be quite important to the case, and I don't see how its importance was diminished in any way by the way in which the trial unfolded. Well here, Your Honor, at trial, counsel was able to establish that no witnesses ever saw Mr. Rivera in possession of a knife, that no knife was recovered from the crime scene or the surrounding area, and her defense... So in the absence of any explanation, the most powerful inference is that Mr. Rivera, who was seen in this fight, is the one who stabbed him. I mean, it seems to me that, again, to repeat myself, the importance of being able to suggest that somebody else was responsible for that remained just as important after the case went in as it arguably was before. Well, Your Honor, I would submit again that if you look at how all of the evidence unfolded, it is reasonable that counsel changed her strategy, and that is all that needs to be found if there was a strategic decision. We have two cases which talk forcefully about the effect on a jury of a failure to deliver a promise that was made in an open statement. Yes, Your Honor. Why doesn't that concern express forcefully in those two cases not apply just as forcefully here? The Anderson and Uber cases? Yes. First, Anderson, Your Honor, was a pre-ed the case, and in that case, factually, the doctors were available to testify. And here, Diaz was not available. So this court... So what? I mean, that seems like... What strikes me is a rather odd analysis of the district court, that the fact that this evidence may have been undeliverable somehow is relevant to the prejudice analysis. What's relevant is how the jury would have perceived the failure to present this evidence, whether it was or was not deliverable. Well, Your Honor, this court also found in Anderson that there was no strategic choice where there could be nothing to gain, and that counsel damaged the defense they primarily relied on. And I would submit that is not what happened here. From the record, again, counsel did not damage the defense she relied on at trial, which was circumstantial evidence. And I believe Breyer's dissent in Anderson said, even if it was a mistake to mention that to the jury, does counsel have to perpetuate that mistake and keep bringing it up and bringing it up? Here, again, Diaz was not available. So it's possible that that could have hurt her client. Well, that was Justice Breyer's decision, but it was a dissent, right? It was a dissent, Your Honor, yes. Regarding the Uber case, factually, the lawyer structured the entire defense around the petitioner's testimony. And again, I would submit that is not what happened here. Based on the record. And there was no record support in Uber for the state court's finding that the attorney's conduct was a reasonable strategic choice. And again, here, as the district court found, there is one. And if there are no further questions, I see my time is up. I'll rest on my brief. Thank you. Thank you. Just in response to the comment that Diaz was not available, again, it's not a question of whether Diaz was available himself as a witness. If you're presenting a third-party culprit defense, you very rarely call the third-party culprit as a witness yourself. The question was whether counsel could have elicited information of Diaz's presence and participation from the witnesses that the Commonwealth called. And I think that is clearly established on the record because both Ana Lydia Reyes and Gonzalez mentioned Diaz's presence and said that he was there. And Gonzalez went on and talked about how he participated at least somewhat in a violent way in the assault. The second point I wanted to make was just... Was he the one with the bat who was... Diaz, yeah. Diaz, who was hitting... It's confusing because when trial counsel mentions him, she says Luis Ruiz. And it's pretty clear that what she meant to say was Luis Diaz, but then Luis Diaz is a.k.a. Fernando Alvarez. So it gets a little confusing in the record, but Diaz, Ruiz, Alvarez are all one person. Is there testimony about what he does with that bat? There's only a police report, a statement from Gonzalez about him hitting Mr. Rivera with a baseball bat. The second point I want to make was just in response to the claim that Cistran had no description of the stabber and therefore the questions couldn't have been interrogation. I think he knew he was responding to a stabbing. He knew the defendant was coming from the area of the stabbing. It was late at night. It was winter. He was alone. He was walking. He initially refuses to stop. He only stops after the officer draws his gun and then the officer sees blood on his hands. So I think those facts made it pretty clear to the officer that any question he was going to ask him about what he was doing would elicit an incriminating response. Thank you.